**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | |
|---|---|
| VENTOURA PHILLIPS, *individually and on behalf of all others similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br>AFLAC INCORPORATED,<br><br>*Defendant*. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Ventoura Phillips ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, brings this Class Action Complaint against Defendant Aflac Incorporated ("Defendant"), alleging as follows based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to Plaintiffs, which is based on personal knowledge:

## SUMMARY OF THE CASE

1. This action arises from Defendant's failure to secure the personally identifiable information ("PII")[1] and protected health information ("PHI")[2] (collectively, "Private Information") of Plaintiffs and the members of the proposed Class, where Plaintiff provided his Private Information to Defendant for supplemental insurance services and products.

2. Defendant's data security failures allowed a targeted cyberattack to compromise sensitive information entrusted to Defendant that contained PII and PHI ("Private Information") of Plaintiff and other individuals ("the Class"), that was compromised in a cyber incident (the "Data Breach") in June 2025.

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8).

[2] Under the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq.*, and its implementing regulations ("HIPAA"), "protected health information" is defined as individually identifiable information relating to the past, present, or future health status of an individual that is created, collected, or transmitted, or maintained by a HIPAA-covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations. 45 C.F.R. § 160.103 *Protected health information*. "Business Health information such as diagnoses, treatment information, medical test results, and prescription information are considered protected health information under HIPAA, as are national identification numbers and demographic information such as birth dates, gender, ethnicity, and contact and emergency contact information. *Summary of the HIPAA Privacy Rule*, DEP'T FOR HEALTH & HUM. SERVS., https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html.

3. "[Defendant] is a Fortune 500 company, providing financial protection to millions of policyholders and customers through its subsidiaries in the U.S. and Japan. When a policyholder or insured gets sick or hurt, Aflac pays cash benefits promptly, for eligible claims, directly to the insured (unless assigned otherwise). For more than six decades, Aflac voluntary insurance policies have given policyholders the opportunity to focus on recovery, not financial stress."[3]

4. On June 12, 2025, Defendant identified suspicious activity on its IT Network.[4] In response, Defendant promptly initiated its cyber incident response protocol and launched an investigation to determine the nature and scope of the Data Breach.[5]

5. Defendant confirmed that the Data Breach was led by a sophisticated cybercrime group.[6]

6. On or about April 2, 2024, Defendant discovered that an unauthorized actor or actors accessed and acquired files from its IT systems on or about April 1, 2024.

7. On or about June 20, 2025, Defendant began sending emails entitled "Aflac Cybersecurity Incident" ("Notice Email") to Plaintiff and Class Members,

---

[3] https://www.aflac.com/about-aflac/default.aspx.
[4] AFLAC, *Information Related to the Recently Disclosed Cyber Security Incident* (2025), https://www.aflac.com/docs/aflac-cyber-incident-6-24-2025.pdf
[5] Id.
[6] Id.

advising them that it recently detected suspicious activity on its network. In its Notice Email, Defendant advises that its investigation into the cybersecurity incident is ongoing and that it has not yet confirmed the extent of unauthorized activity, potentially impacted data, or the customers or other individuals impacted in the cybersecurity incident ("Data Breach").

8. According to the Notice Email, the Private Information intruders accessed and infiltrated from Defendant's systems included claims information, health information, Social Security numbers, and/or other personal information, related to customers, beneficiaries, employees, agents, and other individuals in Defendant's U.S. business.

9. As a result of the Data Breach, which Defendant failed to prevent, the Private Information of Plaintiff and the proposed Class Members, was stolen.[7]

10. Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to implement reasonable measures to safeguard the Private Information of its current and former customers, beneficiaries, employees, agents, and other individuals in its U.S. business, and by failing to take necessary steps to prevent unauthorized disclosure of that information. Defendant's woefully inadequate data security measures made the Data Breach a foreseeable, and even likely, consequence of its negligence.

---

[7] *Id.*

11. As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered actual and present injuries, including but not limited to: (a) present, certainly impending, and continuing threats of identity theft crimes, fraud, scams, and other misuses of their Private Information; (b) diminution of value of their Private Information; (c) loss of benefit of the bargain (price premium damages); (d) loss of value of privacy and confidentiality of the stolen Private Information; (e) illegal sales of the compromised Private Information; (f) mitigation expenses and time spent responding to and remedying the effects of the Data Breach; (g) identity theft insurance costs; (h) "out of pocket" costs incurred due to actual identity theft; (i) credit freezes/unfreezes; (j) expense and time spent initiating fraud alerts and contacting third parties; (k) decreased credit scores; (l) anxiety, annoyance, and nuisance; and (m) continued risk to their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

12. Plaintiff and Class Members would not have provided their valuable Private Information had they known that Defendant would make their Private Information Internet-accessible, not encrypt personal and sensitive data elements, and not delete the Private Information it no longer had reason to maintain.

13. Through this lawsuit, Plaintiff seeks to hold Defendant responsible for the injuries it inflicted on Plaintiff and Class Members due to its inadequate data security measures, and to seek injunctive relief to ensure the implementation of security measures to protect the Private Information that remains in Defendant's possession.

14. The exposure of one's Private Information to cybercriminals is a bell that cannot be unrung. Before this Data Breach, Plaintiff's and the Class's Private Information was exactly that—private. Not anymore. Now, their Private Information is forever exposed and unsecure.

## JURISDICTION AND VENUE

15. The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of Class Members is in the millions, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

16. This Court has personal jurisdiction over Defendant because it is a Georgia corporation that operates and has its principal place of business in this District and conducts substantial business in this District.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Moreover, Defendant is domiciled in this District, maintains Plaintiff's and Class Members' Private Information in this District, and has caused harm to Plaintiff and Class Members in this District.

## PARTIES

18. Plaintiff is, and at all relevant times has been, a resident and citizen of Jefferson County, Alabama.

19. Defendant is a Georgia corporation with its headquarters and principal place of business located at 1932 Wynnton Road, Columbus, Georgia 31999.

## FACTUAL ALLEGATIONS

*The Data Breach*

20. Aflac provides its customers with supplemental health insurance for accident, cancer, critical illness, hospital stays, short-term disability, dental, and vision care.[8]

[8] AFLAC, *What is Supplemental Health Insurance?*, https://www.aflac.com/resources/health-insurance/what-is-supplemental-health-insurance.aspx

21. As a condition of obtaining insurance, Plaintiff and Class Members were required to provide Defendant with their sensitive and confidential Private Information, including their names, claims information, health information, Social Security numbers, and other sensitive information, that at the time of the Data Breach were held by Defendant in its computer systems.

22. Defendant sent a notice to Plaintiff and Class Members. In the Notice Email, Defendant offers Plaintiff and Class Members 24 months of credit monitoring and provides a dedicated call center to answer questions they may have about the Data Breach.

23. On June 20, 2025, Defendant also posted a press release on its website, entitled "Aflac Incorporated Discloses Cybersecurity Incident" ("Online Disclosure"). The Online Disclosure states:

> On June 12, 2025, Aflac Incorporated (NYSE: AFL) identified suspicious activity on our network in the United States. We promptly initiated our cyber incident response protocols and stopped the intrusion within hours. Importantly, our business remains operational, and our systems were not affected by ransomware. We continue to serve our customers as we respond to this incident and can underwrite policies, review claims, and otherwise service our customers as usual. This attack, like many insurance companies are currently experiencing, was caused by a sophisticated cybercrime group. This was part of a cybercrime campaign against the insurance industry.
>
> We have engaged leading third-party cybersecurity experts to support our response to this incident. While the investigation remains in its early stages, in the spirit of transparency and care for our customers, we are sharing that our preliminary findings indicate that the unauthorized party used social engineering tactics to gain access to our network.

> Additionally, we have commenced a review of potentially impacted files. It is important to note that the review is in its early stages, and we are unable to determine the total number of affected individuals until that review is completed. The potentially impacted files contain claims information, health information, social security numbers, and/or other personal information, related to customers, beneficiaries, employees, agents, and other individuals in our U.S. business. We remain committed to caring for and supporting our customers. While our teams work to review the potentially impacted data and determine the specific information involved, we are offering **any individual who contacts our dedicated call center free credit monitoring and identity theft protection, and Medical Shield for 24 months.**[9]

24. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class Members, such as encrypting the information or purging it when it is no longer needed, causing the exposure of Private Information.

25. As evidenced by the Data Breach, the Private Information contained in Defendant's network and was not encrypted. Had the information been properly encrypted, the data thieves would have exfiltrated only unintelligible data.

26. As a result of the Data Breach, Plaintiff and Class Members are now at a current, imminent, and ongoing risk of fraud and identity theft. Plaintiff and Class Members must now and for years into the future closely monitor their medical and financial accounts to guard against identity theft. As a result of Defendant's

[9] https://newsroom.aflac.com/2025-06-20-Aflac-Incorporated-Discloses-Cybersecurity-Incident.

unreasonable and inadequate data security practices, Plaintiff and Class Members have suffered numerous actual and concrete injuries and damages.

27. The risk of identity theft is not speculative or hypothetical but is impending and has materialized as there is evidence that the Plaintiff and Class Members' Private Information was targeted, accessed, has been misused, and disseminated on the Dark Web.

28. Plaintiff and Class Members must now closely monitor their financial accounts to guard against future identity theft and fraud. Plaintiff and Class Members have heeded such warnings to mitigate against the imminent risk of future identity theft and financial loss. Such mitigation efforts have included and will continue to include in the future, among other things: (a) reviewing financial statements; (b) changing passwords; and (c) signing up for credit and identity theft monitoring services. The loss of time and other mitigation costs are tied directly to guarding against the imminent risk of identity theft.

29. Plaintiff and Class Members have suffered numerous actual and concrete injuries as a direct result of the Data Beach, including: (a) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (c) financial costs incurred due to actual identity theft; (d) loss of time incurred due to actual identity theft; (e) deprivation of value of

their Private Information; and (f) the continued risk to their sensitive Private Information, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect it.

30. Through this Complaint, Plaintiff seeks to remedy these harms on behalf of himself, and all similarly situated individuals whose Private Information was accessed during the Data Breach.

31. Accordingly, Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, as well as long-term and adequate credit monitoring services funded by Defendant, and declaratory relief.

32. On June 12, 2025, Defendant identified suspicious activity on its IT Network.[10] In response, Defendant promptly initiated its cyber incident response protocol and launched an investigation to determine the nature and scope of the Data Breach.[11]

---

[10] *See* AFLAC, *Information Related to the Recently Disclosed Cyber Security Incident* (2025), https://www.aflac.com/docs/aflac-cyber-incident-6-24-2025.pdf .

[11] *Id.*

33. Defendant has confirmed that the Data Breach was led by a sophisticated cybercrime group.[12]

34. On or about April 2, 2024, Defendant discovered that an unauthorized actor or actors accessed and acquired files from its IT systems on or about April 1, 2024.[13] In response, Defendant launched an investigation to determine the nature and scope of the Data Breach.[14]

35. Upon information and belief, Defendant's investigation determined that the following types of Private Information were compromised because of the Data Breach: health information, Social Security numbers, and/or other personal information, related to customers, beneficiaries, employees, agents, and other individuals in its U.S. business.[15]

36. Recently, Defendant began sending out notice emails to customers informing them about the Data Breach.[16]

37. Plaintiff's claims arise from and relate to Defendant's failure to safeguard her Private Information and failure to provide timely notice of the Data Breach.

---

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

38. Defendant failed to take precautions designed to keep individuals' Private Information secure.

39. While Defendant sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive Private Information of Plaintiff and Class Members.

40. Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

41. Defendant failed to take adequate measures to protect Plaintiff and Class Members Private Information against unauthorized access.

42. The Private Information that was exposed in the Data Breach is the type of private information that Defendant knew or should have known would be the target of cyberattacks.

43. Despite its own knowledge of the inherent risks of cyberattacks, and notwithstanding the Federal Trade Commission's (the "FTC") data security principles and practices,[17] Defendant failed to disclose that its security practices were inadequate to reasonably safeguard individuals' sensitive Private Information.

---

[17] *Protecting Personal Information: A Guide for Business,* FED. TRADE COMM'N (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business..

44. The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[18] Immediate notification of a Data Breach is critical so that those impacted can take measures to protect themselves.

*Aflac's Business*

45. Defendant is a Fortune 500 company that provides financial protection to millions of policyholders and customers through its subsidiaries in the U.S. and Japan.

46. Upon information and belief, in the course of collecting Private Information from individuals, including Plaintiff and Class Members, Defendant promised to provide confidentiality and adequate security for the data it collected from individuals through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

47. Because of the highly sensitive and personal nature of the information Defendant acquires and stores with respect to customers and employees, Defendant, upon information and belief, promises to, among other things: keep protected health information private; comply with industry standards related to data security and Private Information, inform consumers of its legal duties and comply with all federal

---

[18] *Id.*

and state laws protecting consumer Private Information; only use and release Private Information for reasons that relate to medical care and treatment, and, provide adequate notice to individuals if their Private Information is disclosed without authorization.

48. At every step, Defendant acquires and maintains sensitive Private Information and has a duty to protect that Private Information from unauthorized access.

49. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

50. Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

51. Plaintiff and Class Members relied on Defendant to implement and follow adequate data security policies and protocols, to keep their Private Information confidential and securely maintained, to use their Private Information solely for proper business services and purposes, and to prevent the unauthorized disclosure of their Private Information.

*Defendant had a Duty to Protect the Private Information*

52. Defendant's failure to adequately secure Plaintiff's and Class Members' Private Information breaches duties it owes Plaintiff and Class Members under statutory and common law. Moreover, Plaintiff and Class Members surrendered their highly sensitive personal data to Defendant under the implied condition that Defendant would keep it private and secure. Accordingly, Defendant also has an implied duty to safeguard its data, independent of any statute.

53. Defendant was prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

54. Therefore, the increase in such attacks, and the attendant risk of future attacks, was widely known to the public and to anyone in the insurance industry, including Defendant.

55. In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in

Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Plaintiff and Class Members.

56. Defendant owed a duty to Plaintiff and Class Members to design, maintain, and test its computer systems, servers, and networks to ensure that the Private Information in its possession was adequately secured and protected.

57. Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including not sharing information with other entities who maintained substandard data security systems.

58. Defendant owed a duty to Plaintiff and Class Members to implement processes that would immediately detect a breach on its data security systems in a timely manner.

59. Defendant owed a duty to Plaintiff and Class Members to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in the decision to entrust this Private Information to Defendant.

60. Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

61. Defendant owed a duty to Plaintiff and Class Members to encrypt and/or more reliably encrypt Plaintiff and Class Members' Private Information and monitor user behavior and activity in order to identify possible threats.

62. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members and the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

63. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to, at least, tens of thousands of individuals' Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

*Value of Private Information*

64. The Private Information of individuals remains of high value to criminals, as evidenced by the prices criminals will pay through the Dark Web. Numerous sources cite Dark Web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and

bank details have a price range of $50 to $200.[19] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[20] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[21]

65. Based on the foregoing, the information compromised in the Data Breach, including full names matched with Social Security numbers, is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

66. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[22]

---

[19] Anita George, *Your personal data is for sale on the dark web. Here's how much it costs*, Digital Trends (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the- dark-web-how-much-it-costs/

[20] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your- personal-information-is-selling-for-on-the-dark-web/

[21] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous- browsing/in-the-dark/

[22] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/a

67. Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

68. The fraudulent activity resulting from the Data Breach may not come to light for years as there may be a time lag between when harm occurs versus when it is discovered, and also between when the Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data has been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[23]

69. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members, including Social Security numbers, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

---

rticle/2880366/anthem-hack-personal-data-stolen-sells-for-10x- price-of-stolen-credit-card-numbers.html.

[23] Report to Congressional Requesters, GAO, at 29 (June 2007), available at: https://www.gao.gov/assets/gao-07-737.pdf

70. Plaintiff and Class Members now face a lifetime of constant surveillance of their financial and personal records, credit monitoring, and loss of rights. Class Members are incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

71. Defendant has acknowledged the risk and harm caused to Plaintiff and Class Members as a result of the Data Breach. Defendant, to date, has offered Plaintiff and Class Members abbreviated, non-automatic credit monitoring services. The limited credit monitoring is inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the Private Information at issue here. Moreover, Defendant put the burden squarely on Plaintiff and Class Members to enroll in the inadequate monitoring services.

*Defendant Failed to Properly Protect Plaintiff's and Class Members' Private Information*

72. Defendant could have prevented this Data Breach by properly securing and encrypting the systems containing the Private Information of Plaintiff and Class Members. Alternatively, Defendant could have destroyed the data, especially for individuals with whom it had not had a relationship for a period of time.

73. Defendant's negligence in safeguarding the Private Information of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts

directed to companies like Defendant to protect and secure sensitive data they possess.

74. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

75. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[24]

76. The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for their respective lifetimes.

---

[24] *See generally Fighting Identity Theft with the Red Flags Rule: A How-To Guide for Business*, FED. TRADE COMM., https://www.ftc.gov/business-guidance/resources/fighting-identity-theft-red- flags-rule-how-guide-business

77. To prevent and detect unauthorized cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- **Implement an awareness and training program**. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.
- **Enable strong spam filters** to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.
- **Scan all incoming and outgoing emails** to detect threats and filter executable files from reaching end users.
- **Configure firewalls** to block access to known malicious IP addresses.
- **Patch operating systems, software, and firmware on devices**. Consider using a centralized patch management system.
- **Set anti-virus and anti-malware programs to conduct regular scans automatically**.
- **Manage the use of privileged accounts based on the principle of least privilege**: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.
- **Configure access controls**—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.
- **Disable macro scripts from office files transmitted via email**. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- **Implement Software Restriction Policies (SRP)** or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- **Consider disabling Remote Desktop protocol (RDP)** if it is not being used.

- **Use application whitelisting**, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- **Categorize data based on organizational value** and implement physical and logical separation of networks and data for different organizational units.[25]

78. To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to

[25] *Id.* at 3-4.

legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[26]

79. To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates;

---

[26] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at* https://www.cisa.gov/news-events/news/protecting-against-ransomware

- Use threat and vulnerability management;
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

- Monitor for adversarial activities;
- Hunt for brute force attempts;
- Monitor for cleanup of Event Logs;
- Analyze logon events;

**Harden infrastructure**

- Use Windows Defender Firewall;
- Enable tamper protection;
- Enable cloud-delivered protection;
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[27]

80. Moreover, given that Defendant was storing the Private Information of Plaintiff and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

---

[27] *See Human-operated ransomware attacks: A preventable disaster*, Microsoft (Mar. 5, 2020). https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a- preventable-disaster/

81. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the Private Information of Plaintiff and Class Members.

82. As a result of computer systems in need of security upgrades, inadequate procedures for handling email phishing attacks, viruses, malignant computer code, hacking attacks, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information.

83. Because Defendant failed to properly protect and safeguard Plaintiff and Class Members' Private Information, an unauthorized third party was able to access Defendant's network, and access Defendant's database and system configuration files and exfiltrate that data.

*Defendant Failed to Comply with Industry Standards*

84. As shown above, experts studying cyber security routinely identify companies in the logistics industry as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

85. Several best practices have been identified that at a minimum should be implemented by logistic and warehousing providers like Defendant, including, but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data

unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

86. Other best cybersecurity practices that are standard in the industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

87. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

88. The foregoing frameworks are existing and applicable industry standards in the logistics industry, and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

89. Upon information and belief, Defendant failed to comply with one or more of the foregoing industry standards.

*Plaintiff Ventoura Phillip's Experience*

90. Plaintiff, Ventoura Phillips, is and at all times relevant hereto was, a citizen and resident of Jefferson County, Alabama.

91. Plaintiff Phillips obtained insurance from Aflac.

92. Plaintiff Philips provided Defendant with his Private Information as a condition of obtaining insurance with Defendant.

93. On June 20, 2025, Defendant sent Plaintiff Phillips a data breach notice informing him about the Data Breach.

94. Defendant was in possession of Plaintiff Phillips's Private Information before, during, and after the Data Breach.

95. Plaintiff Phillips reasonably understood and expected that Defendant would safeguard his Private Information and timely and adequately notify him in the event of a data breach. Plaintiff would not have allowed Defendant, or anyone in Defendant's position, to maintain his Private Information if he believed that Defendant would fail to implement reasonable and industry standard practices to safeguard that information from unauthorized access.

96. Plaintiff Phillips greatly values her privacy and Private Information and takes reasonable steps to maintain the confidentiality of his Private Information. Plaintiff is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

97. Plaintiff Phillips stores any and all documents containing Private Information in a secure location and destroys any documents he receives in the mail that contain any Private Information or that may contain any information that could otherwise be used to compromise his identity and credit card accounts. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

98. Plaintiff Phillips was the victim of fraud when an unauthorized transaction on his PayPal-linked account was used to purchase Bitcoin. Plaintiff Phillips suffered through stress and anxiety upon receiving this notification that his PayPal account was used to fraudulently purchase bitcoin.

99. As a result of the Data Breach, Plaintiff Phillips has spent time researching the Data Breach, reviewing his accounts, monitoring his credit report, and other necessary mitigation efforts to avoid potential scams and mitigate the risk of misuse of his Private Information. This is valuable time that Plaintiff spent at Defendant's direction and that he otherwise would have spent on other activities, including but not limited to work and/or recreation.

100. The Data Breach has caused Plaintiff Phillips to suffer fear, anxiety, and stress that his Private Information was acquired by criminals as a result of the Data Breach.

101. Plaintiff Phillips anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff will continue to be at present and continued increased risk of identity theft and fraud for years to come.

102. Plaintiff Phillips has a continuing interest in ensuring that his Private Information, which upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

103. As a direct and traceable result of the Data Breach, Plaintiff Phillips suffered actual injury and damages after his Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring his accounts and credit reports for fraudulent activity; (b) loss of privacy due to his Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendant did not adequately protect his Private Information; (d) emotional distress because identity thieves now possess his sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that his Private Information has been stolen and likely published on the dark web; (f) diminution in the value of his Private Information, a form of intangible property that Defendant obtained from Plaintiff; and (g) other economic and non-economic harm.

## CLASS ALLEGATIONS

104. Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following class:

> **All individuals in the United States whose Private Information was impacted in the Defendant's Data Breach reported in June 2025.**

105. Excluded from the Class are Defendant, its subsidiaries and affiliates, its officers, directors and members of its immediate families and any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of its immediate families.

106. Plaintiff reserves the right to modify or amend the definition of the proposed Class prior to moving for class certification.

107. **Numerosity**, Fed R. Civ. P. 23(a)(1): Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are at least thousands of individuals who were notified by Defendant of the Data Breach. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

108. **Commonality**, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

a. Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

b. Whether Defendant had duties not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;

c. Whether Defendant had duties not to use the Private Information of Plaintiff and Class Members for non-business purposes;

d. Whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class Members;

e. Whether and when Defendant actually learned of the Data Breach;

f. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g. Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;

h. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiff and Class Members;

k. Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

l. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

109. **Typicality**, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because all had their Private Information compromised as a result of the Data Breach, due to Defendant's misfeasance.

110. **Policies Generally Applicable to the Class**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members

uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

111. **<u>Adequacy</u>**, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

112. **<u>Superiority and Manageability</u>**, Fed. R. Civ. P. 23(b)(3): Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could

afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

113. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

114. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

115. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

116. Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

117. Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

118. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

b. Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

c. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d. Whether Defendant adequately and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

e. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

f. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiff and Class Members;

g. Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## **COUNT I – NEGLIGENCE**

***(On Behalf of Plaintiff and the Class)***

119. Plaintiff and the Class repeat and reallege by reference Paragraphs 1-118 above as if fully set forth herein.

120. Plaintiff and the Class entrusted Defendant with their Private Information.

121. Plaintiff and the Class were required to submit their Private Information to Defendant in order to receive insurance coverage from Aflac.

122. In providing their Private Information, Plaintiff and Class Members had a reasonable expectation that this information would be securely maintained and not easily accessible to, or exfiltrated by, cybercriminals.

123. Plaintiff and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

124. Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

125. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

126. By collecting and storing the Private Information of Plaintiff and the Class on its system, Defendant owed to Plaintiff and the Class a duty of reasonable

care in handling and using this information and securing and protecting the information from being stolen, accessed, and misused by unauthorized parties. Pursuant to this duty, Defendant was required to affirmatively design, maintain, and test its security systems to ensure that these systems were reasonably secure and capable of protecting the Private Information of Plaintiff and the Class. Defendant further owed to Plaintiff and the Class a duty to affirmatively implement systems and procedures that would detect a breach of its security systems in a timely manner and to timely act upon security alerts from such systems.

127. Defendant owed this duty to Plaintiff and the Class because Plaintiff and the Class comprise a well-defined, foreseeable, and probable class of individuals whom Defendant should have been aware could be injured by Defendant's inadequate security protocols.

128. Defendant actively solicited clients who entrusted Defendant with Plaintiff's and the other Class Members' Private Information when obtaining and insurance from Defendant. Defendant affirmatively used, handled, gathered, and stored the Private Information of Plaintiff and the other Class Members. Attendant to Defendant's solicitation, use and storage, Defendant knew of its inadequate and unreasonable security practices regarding its computer/server systems and also knew that hackers and thieves routinely attempt to access, steal, and misuse the Private Information with which Defendant had been entrusted. As such, Defendant knew a

breach of its systems would cause damage to Plaintiff and the Class. Thus, Defendant had a duty to act reasonably in collecting, storing, maintaining, and protecting the Private Information of its healthcare clients' patients.

129. Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the Private Information of Plaintiff and the Class in Defendant's possession was adequately secured and protected.

130. Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the Private Information of Plaintiff and the Class.

131. Defendant's duty of care to act reasonably in collecting, storing, and maintaining the Private Information, and to use reasonable security measures, arose as a result of the special relationship that existed between Defendant and its clients, which is recognized by various laws and regulations including, but not limited to HIPPA and the FTC Act, and common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

132. Defendant's duty to act reasonably in collecting, storing, and maintaining the Private Information, and to use reasonable security measures, arose under HIPAA which required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. 164.530(c)(1).

133. Defendant also had a duty to act reasonably in collecting, storing, and maintaining the Private Information, and to use reasonable security measures, under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

134. Defendant's duty to act reasonably in collecting, storing, and maintaining the Private Information, and to use reasonable care in protecting such information arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information that it either affirmatively acquires, maintains, or stores. Industry standards require Defendant to exercise reasonable care with respect to Plaintiff and the Class by implementing reasonable data security measures that do not create a foreseeable risk of harm to Plaintiff and the Class. Industry best practices put the onus of adequate cybersecurity on the entity most capable of preventing a

data breach. In this case, Defendant was the only entity that could adequately protect the data that that it solicited, collected, and stored.

135. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices and other data breaches in the industry.

136. Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

137. Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein.

138. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the Private Information of Plaintiff and the Class, including basic encryption techniques freely available to Defendant.

139. Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

140. Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of Data Breach.

141. Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

142. Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the Private Information of Plaintiff and the Class.

143. Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

144. Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Private Information of Plaintiff and the Class during the time the Private Information was within Defendant's possession or control.

145. Defendant improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

146. Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the Private Information of Plaintiff and the Class in the face of increased risk of theft.

147. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of Private Information.

148. Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove Private Information that it was no longer required to retain pursuant to regulations.

149. Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

150. But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the Private Information of Plaintiff and the Class would not have been compromised.

151. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the

Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

152. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of Plaintiff and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has

been and will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

153. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

154. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

155. Plaintiff and the Class are entitled to compensatory and consequential damages suffered as a result of the Data Breach, or in the alternative, nominal dama.

## COUNT II – NEGLIGENCE *PER SE*
***(On Behalf of Plaintiff and the Class)***

156. Plaintiff and the Class repeat and reallege by reference Paragraphs 1 through 118 above as if fully set forth herein.

157. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and the Class Members' Private Information.

158. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

159. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard

160. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class due to the valuable nature of the Private Information at issue in this case – including Social Security Numbers.

161. Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect and the harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against.

162. The Private Information of Plaintiff and the Class was stolen as the proximate result of Defendant's failure to exercise reasonable care in accordance with the standards required by the FTC Act.

163. Defendant's violations of Section 5 of the FTC Act therefore constitute negligence *per se.*

164. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of Plaintiff and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has

been and will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

165. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

166. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

167. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach. In the alternative, Plaintiff and the Class are entitled to nominal damages.

168. Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to (a) strengthen its data security systems and monitoring procedures; (b) submit to future annual audits of those systems and monitoring

procedures; (c) destroy the Personal Information it continues to maintain; and (d) continue to provide adequate credit monitoring to all Class Members.

**COUNT III – DECLARATORY JUDGMENT**
***(On Behalf of Plaintiff and the Class)***

169. Plaintiff re-alleges and incorporates by reference herein all of the factual allegations contained in 1 through 118.

170. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal statute described in this Complaint.

171. Defendant owes a duty of care to Plaintiff and Class Members, which required it to adequately secure Plaintiff and Class Members' Private Information.

172. Upon information and belief, Plaintiff and Class Members' Private Information still remains in Defendant's possession.

173. An actual controversy has arisen after the Data Breach regarding Plaintiff and Class Members' Private Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their Private Information. Plaintiff alleges that Defendant's data security measures remain inadequate.

Defendant publicly denies these allegations. Furthermore, Plaintiff continues to suffer injury due to the compromise of their Private Information and remain at imminent risk that further compromises of their Private Information will occur in the future. It is unknown what specific measures and changes Defendant has undertaken in response to the Data Breach.

174. Plaintiff alleges that Defendant's data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of his Private Information and the risk remains that further compromises of his and the Class's Private Information will occur in the future.

175. Plaintiff and Class Members have an ongoing, actionable dispute arising out of Defendant's inadequate security measures, including: (i) Defendant's failure to encrypt Plaintiff and Class Members' Private Information, including Social Security numbers, while storing it in an Internet-accessible environment, and (ii) Defendant's failure to delete Private Information it has no reasonable need to maintain in an Internet-accessible environment, including the Social Security numbers of Plaintiff.

176. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owes a legal duty to secure the Private Information of Plaintiff and Class Members;

b. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' Private Information;

c. Defendant's ongoing breaches of its legal duty continue to cause Plaintiff harm.

177. This Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law, industry, and government regulatory standards to protect consumers' Private Information. Specifically, this injunction should, among other things, direct Defendant to:

a. engage third-party auditors, consistent with industry standards, to test its systems for weakness and upgrade any such weakness found;

b. audit, test and train its data security personnel regarding any new or modified procedures and how to respond to a data breach;

c. regularly test its systems for security vulnerabilities, consistent with industry standards; and

d. implement an education and training program for appropriate employees regarding cybersecurity.

178. If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at

Defendant occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

179. The hardship to Plaintiff, if an injunction is not issued, exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to use such measures.

180. Issuance of the requested injunction will satisfy the public interest. On the contrary, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and others whose confidential information would be further compromised.

## COUNT IV– UNJUST ENRICHMENT
***(On Behalf of Plaintiff and the Class)***

181. Plaintiff and the Class repeat and reallege by reference Paragraphs 1 through 118 above as if fully set forth herein.

182. Plaintiff and Class Members have an interest, both equitable and legal, in their Private Information that was collected, stored, and maintained by Defendant and that was ultimately compromised in the Data Breach.

183. Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of monies paid for insurance coverage, a portion of which was reasonably paid for the storage and maintenance of Plaintiff's and Class Members' Private Information in Defendant's system.

184. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information.

185. The relationship between Defendant and Plaintiff and Class Members is not attenuated, as Plaintiff and Class Members had a reasonable expectation that the security of their Private Information would be maintained when they provided their Private Information to Defendant.

186. Defendant benefited by the conferral upon it of the Private Information pertaining to Plaintiffs and the Class Members and by its ability to retain, use, and profit from that information. Defendant understood and valued this benefit.

187. Defendant also understood and appreciated that the Private Information pertaining to Plaintiff and Class Members was personal, private and confidential and its value depended upon Defendant maintaining the privacy and confidentiality of that Private Information.

188. Without Defendant's willingness and commitment to maintain the privacy and confidentiality of the Private Information, that Private Information

would not have been transferred to and entrusted to Defendant. Further, if Defendant had disclosed that its data security measures were inadequate, it would not have been permitted to continue in operation by regulators.

189. Because of Defendant's collection, storage, and use of Plaintiff's and Class Members' Private Information, Defendant sold more services and products than it otherwise would have. Defendant was unjustly enriched by profiting from the additional services and products it was able to market, sell, and create to the detriment of Plaintiff and Class Members.

190. Defendant also benefitted through its unjust conduct by retaining money that it should have used to provide reasonable and adequate data security to protect Plaintiff's and Class Members' Private Information.

191. Defendant also benefitted through its unjust conduct in the form of the profits it gained through the use of Plaintiff's and Class Members' Private Information.

192. It is inequitable for Defendant to retain these benefits.

193. As a result of Defendant's wrongful conduct as alleged herein (including among other things Defendant's failure to employ adequate data security measures, its continued maintenance and use of the Private Information belonging to Plaintiff and Class Members without having adequate data security measures, and its other conduct facilitating the theft of that Private Information), Defendant has

been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

194. Defendant's unjust enrichment is traceable to and resulted directly and proximately from the conduct alleged herein, including the compiling and use of Plaintiff's and Class Members' sensitive Private Information, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

195. It is inequitable, unfair, and unjust for Defendant to retain these wrongfully obtained benefits. Defendant's retention of wrongfully obtained monies violates fundamental principles of justice, equity, and good conscience.

196. The benefit conferred upon, received, and enjoyed by Defendant was not conferred gratuitously, and it would be inequitable, unfair, and unjust for Defendant to retain the benefit.

197. Defendant's defective security and its unfair and deceptive conduct have, among other things, caused Plaintiff and Class Members to unfairly incur substantial time and/or costs to mitigate and monitor the use of their Private Information and has caused Plaintiff and Class Members other damages as described herein.

198. Plaintiff and Class Members have no adequate remedy at law.

199. Defendant is therefore liable to Plaintiffs and Class Members for restitution or disgorgement in the amount of the benefit conferred on Defendant as a result of its wrongful conduct, including specifically: the value to Defendant of the Private Information that was stolen in the Data Breach; the profits Defendant received and is receiving form the use of that information; the amounts that Defendant overcharged Plaintiffs and Class Members for use of Defendant's products and services; and the amounts that Defendant should have spent to provide reasonable and adequate data security to protect Plaintiffs' and Class Members' Private Information.

## COUNT V– GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT
**(On Behalf of Plaintiff and the Class)**

200. Plaintiff and the Class repeat and reallege by reference Paragraphs 1 through 118 above as if fully set forth herein.

201. Defendant, Plaintiff, and Class Members are "persons within the meaning of § 10-1-371(5) of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

202. Defendant engaged in deceptive trade practices in the conduct of its business in violation of O.C.G.A. § 10-1-372(a), which states in pertinent part that it is a deceptive trade practice to:

> (a)(5) Represent[] that goods or services have sponsorship, approval, characteristics, . . . uses, [or] benefits . . . that they do not have;
> (a)(7) Represent[] that goods or services are of a particular standard, quality, or grade . . . if they are of another; or
> (a)(12) Engage[] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

203. Defendant engaged in deceptive trade practices in violation of the Georgia UDTPA, Ga. Code Ann. § 10-1-372(a)(5), (7), and (12), by, among other things:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' Private Information, which was a direct and proximate cause of the Data Breach;

b. Making implied or implicit representations that its data security practices were sufficient to protect Plaintiff's and Class Members' Private Information. Defendant made implied or implicit representations that its data security practices were sufficient to protect Plaintiff's and Class Members' Private Information. By virtue of accepting Plaintiff's and Class Members' Private Information from its clients, Defendant

implicitly represented that its data security processes were sufficient to safeguard the Private Information;

c. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

d. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and HIPAA, 42 U.S.C. § 1320d, which was a direct and proximate cause of the Data Breach;

e. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' Private Information, including by implementing and maintaining reasonable security measures;

f. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Private Information, including

duties imposed by the FTC Act, 15 U.S.C. § 45 and HIPAA, 42 U.S.C. § 1320d;

g. Failing to timely and adequately notify Plaintiff and Class Members of the Data Breach;

h. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' Private Information; and

i. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and HIPAA, 42 U.S.C. § 1320d.

204. Past breaches in the industry put Defendant on notice that its data security practices were inadequate to safeguard Plaintiff's and Class Members' Private Information, and Defendant knew or should have known that the risk of a data breach was highly likely.

205. Because Defendant required Plaintiff and Class Members to provide their Private Information as a prerequisite to receive insurance products, Plaintiff

and Class Members reasonably expected that Defendant's data security and data storage systems were adequately secure to protect their Private Information.

206. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Private Information.

207. Defendant intended to mislead Plaintiffs and Class Members and induce them to rely on its misrepresentations and omissions.

208. Plaintiff and Class Members relied on Defendant to advise them if their data security and data storage systems were not adequately secure to protect their Private Information.

209. Plaintiff and Class Members had no opportunity to make any inspection of Defendant's data security practices or to otherwise ascertain the truthfulness of Defendant's representations and omissions regarding data security, including Defendant's failure to alert Plaintiff and Class Members that their data security and data storage systems were not adequately secure and, thus, were vulnerable to attack.

210. Plaintiff and Class Members relied to their detriment on Defendant's misrepresentations and deceptive omissions regarding their data security practices.

211. Had Defendant disclosed that its data security and data storage systems were not secure, and thus, vulnerable to attack, Plaintiff and Class Members would not have entrusted Defendant with their Private Information.

212. Defendant acted intentionally, knowingly, and maliciously to violate the Georgia UDTPA, and recklessly disregarded Plaintiff's and Class Members' rights. Industry data breaches put it on notice that its security and privacy protections were inadequate.

213. Had Defendant disclosed to Plaintiff and Class Members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business, and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant was trusted with sensitive and valuable Private Information regarding hundreds of thousands of consumers, including Plaintiff the Class. Defendant accepted the responsibility of being a steward of this data while keeping the inadequate state of its security controls secret from the public. Accordingly, because Defendant held itself out as maintaining a secure platform for Private Information data, Plaintiff, the Class acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

214. As a direct and proximate result of Defendant's unfair and deceptive business practices, Plaintiff and Class Members suffered ascertainable losses, including but not limited to, a loss of privacy, the loss of the benefit of their bargain, out-of-pocket monetary losses and expenses, the value of their time reasonable incurred to remedy or mitigate the effects of the Data Breach, the loss of value of

their Private Information, the imminent and substantially increased risk of fraud and identity theft, and the need to dedicate future expenses and time to protect themselves against further loss. .

215. To date, Defendant has not provided sufficient details regarding the full scope of the Data Breach, or any details related to the remedial measures it has taken to improve its data security practices and more fully safeguard Plaintiff's and Class Members' Private Information from future compromise. As a result, Plaintiff and Class Members remain uninformed and confused as to the adequacy of Defendant's data security and Defendant's ability to protect the Private Information entrusted to it. Without adequate improvements, Plaintiff's and Class Members' Private Information remains at an unreasonable risk of future compromise.

216. Defendant, through its omissions and its Data Breach Notice Letters, continues to represent and imply that its data security measures are adequate to protect consumers' Private Information. Such continued representations and implications, without disclosure of the full scope of the Data Breach or Defendant's subsequent remedial enhancements, place Plaintiff and Class Members at a future risk of harm, as Plaintiff and Class Members are not fully informed as to whether Defendant's data security measures have been improved since the Data Breach. By all available measures, Defendant's data security practices and systems have not

been adequately improved, and Plaintiff and Class Members remain at an unreasonable risk from future cyberattacks.

217. Plaintiff and the Class are therefore entitled to the injunctive relief sought herein, because, among other things, Defendant continues to retain their Private Information, future cyber-attacks targeting the same data are foreseeable, and Defendant has not provided sufficient notice identifying any remedial measures that will protect the data from future attack. Moreover, absent injunctive relief, Defendant will continue to misrepresent and imply that its data security practices and systems are adequate to protect the Private Information of Plaintiff and Class Members from future cyberattacks without providing any firm details or basis to support these representations.

218. The Georgia UDTPA states that the "court, in its discretion, may award attorney's fees to the prevailing party if . . . [t]he party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive." Ga. Code Ann. § 10-1-373(b)(2). Defendant willfully engaged in deceptive trade practices knowing them to be deceptive. Defendant knew or should have known that its data security practices were deficient. Defendant was aware that entities responsible for collecting and maintaining large amounts of Private Information, including Social Security numbers and financial information, are frequent targets of

sophisticated cyberattacks. Defendant knew or should have known that its data security practices were insufficient to guard against those attacks.

219. The Georgia UDTPA states that "[c]osts shall be allowed to the prevailing party unless the court otherwise directs." Ga. Code Ann. § 10-1-373(b). Plaintiffs and the Class are entitled to recover their costs of pursuing this litigation.

220. Plaintiff and Class Members seek all monetary and non-monetary relief allowed by the Georgia UDTPA, including injunctive relief and attorneys' fees.

**COUNT VI – VIOLATION OF O.C.G.A. § 13-6-11**
**(On Behalf of Plaintiff and the Class)**

221. Plaintiff re-alleges and incorporates by reference herein all of the factual allegations contained in 1 through 118.

222. Defendant through its actions alleged and described herein acted in bad faith, was stubbornly litigious, or caused Plaintiff and the Class unnecessary trouble and expense with respect to the events underlying this litigation.

223. Section 5 of the FTC Act prohibits "unfair…practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as Defendant for failing to implement and use reasonable measures to protect Private Information.

224. Defendant violated Section 5 of the FTC ACT by failing to use reasonable measures to protect Private Information I and not complying with the

industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information that it obtained and stored and the foreseeable consequences of a data breach.

225. Defendant also has a duty under the Georgia Constitution ("the Constitution") which contains a Right to Privacy Clause, Chapter 1, Article 1, to protect its users' private information. The Georgia Constitution states, "no person shall be deprived of life, liberty, or property except by due process of law." Moreover, the Georgia Constitution identifies certain invasions of privacy, including the Public Disclosure of Private Life which prohibits the public disclosure of private facts.

226. This duty has been recognized by the Georgia Supreme Court in the Restatement of the Law of Torts (Second) §652A which specifically recognized four common law invasion of privacy claims in Georgia, which include 1) appropriation of likeness; 2) intrusion on solitude or seclusion; 3) public disclosure of private facts; and 4) false light.

227. Defendant's implementation of inadequate data security measures, its failure to resolve vulnerabilities and deficiencies, and its abdication of its responsibility to reasonably protect data it required Plaintiff and the Class to provide and store on its own servers constitutes a violation of the Georgia Constitution and the Restatement of the Law of Torts (Second).

228. Defendant knew or should have known that it had a responsibility to protect the Private Information it required Plaintiff and the Class to provide and stored, that it was entrusted with this Private Information, and that it was the only entity capable of adequately protecting the Private Information.

229. Despite that knowledge, Defendant abdicated its duty to protect the Private Information it required Plaintiff and the Class to provide and that it stored.

230. As a direct and proximate result of Defendant's actions, Plaintiff and the Class Members' Private Information was stolen. As further alleged above, the Data Breach was a direct consequence of Defendant's abrogation of data security responsibility and its decision to employ knowingly deficient data security measures that knowingly left the Private Information unsecured. Had Defendant adopted reasonable data security measures, it could have prevented the Data Breach.

231. As further described above, Plaintiff and the Class have been injured and suffered losses directly attributable to the Data Breach.

232. Plaintiff and the Class therefore request that their claim for recovery of expenses of litigation and attorneys' fees be submitted to the jury, and that the Court enter a judgment awarding their expenses of litigation and attorneys' fees pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and Class Members, request judgment against Defendant and that the Court grant the following:

A. For an Order certifying the Classes, and appointing Plaintiff and his Counsel to represent the Class;

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C. For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii. requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

iii. requiring Defendant to delete, destroy, and purge the Private Information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv. requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

v. prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database;

vi. requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii. requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix. requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x. requiring Defendant to conduct regular database scanning and securing checks;

xi. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Private Information, as well as protecting the Private Information of Plaintiff and Class Members;

xii. requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a data breach;

xiii. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs

discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv. requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the

class, and to report any deficiencies with compliance of the Court's final judgment;

D. For an award of damages, including, but not limited to, actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

E. For an award of attorneys' fees, costs, and litigation expenses pursuant to O.C.G.A. Section 13-6-11, and as otherwise allowed by law;

F. For pre- and/or post-judgment interest on all amounts awarded; and,

G. Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial in the instant action.

Dated: July 8, 2025

*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson
GA Bar No. 725843
**Gibson Consumer Law Group, LLC**
4279 Roswell Road
Suite 208-108
Atlanta, GA 30342
Telephone: (678) 642-2503
marybeth@gibsonconsumerlawgroup.com

Karen Hanson Riebel*
Kate M. Baxter-Kauf *
**LOCKRIDGE GRINDAL NAUEN**

**P.L.L.P.**

100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
khriebel@locklaw.com
kmbaxter-kauf@locklaw.com
**pro hac vice* forthcoming